Good morning, your honors. Michael Powell representing the petitioner-appellant Ms. Dawn Eagle. I think the narrow question we're trying to litigate here is subject matter jurisdiction of tribal courts in the criminal arena. And I believe it's been established through Nevada v. Hicks and a lot of particular cases in this court and other cases. Talk right into the mic. Yes, your honor, and I have a little bit of laryngitis, so I'm a little bit. I was able to understand perfectly well what you're saying, but just for folks in the courtroom. And what I think the question here is, is whether I don't think there is a question of whether or not a tribal court is a court of limited jurisdiction. For purposes of deciding the question today, the way I conceptualize it, and maybe I'm wrong so you can discuss it, is as if we are considering the jurisdiction of a state court. This is not federal jurisdiction where we can raise it at any time, you don't have to give any notice. This is as if this were a conviction in state court and the state court had decided to do what happened here, so say you have to raise a jurisdictional issue in a timely fashion, which the court here thought wasn't the case. Now, would we have any say on that? I mean, if the state court, or in this case the tribal court, decides that jurisdiction has to be raised in a timely fashion, what is the federal, and this wasn't satisfied, what federal interest is there here? Well, I think there's two differences, Judge Kuczynski, is one, state courts are courts of general jurisdiction, so probably there isn't a federal question. But the Supreme Court has said whether or not the tribal court has jurisdiction over a nonmember is a federal question. Let me stop you right there. There are state courts of general jurisdiction and there are state courts of limited jurisdiction. Yes, sir. You're from where? Nevada, Reno, sir. Nevada, okay. In California, you used to have municipal courts and superior courts. Maybe you're familiar with that. They're unified now, yes, sir. They're unified. But before unification, there was jurisdiction of municipal courts and there was jurisdiction of the so you would say that maybe superior courts were courts of general jurisdiction and then municipal courts were courts of limited jurisdiction, even in state courts. So I'm not sure that all state courts are courts of general jurisdiction. And if they, you know, back then decided the case belongs in one court or another and if you have an objection you have to raise it in a timely fashion, what's the federal interest involved here in disagreeing with that? Due process. I believe due process is, Your Honor, because, again, what we're arguing here is that the tribal court, at least under 1301, and the fact that Congress defined their jurisdiction is limited to what would be the federal jurisdiction under 1133. But due process is not sort of an incantation. You can't just sort of say due process. Is it in the book? Due process, as I understand it, is there has to be a fair set of procedures. So, you know, if state courts, for example, decided to, you know, decide how many jurors you get by drawing lots or something, you know, that might not be fair and you would have a due process interest. But what's unfair about saying, look, if you have a jurisdictional argument, you've got to raise it, I forget exactly here, but before trial or before a certain point in the decision. At least from what I understand their argument is. And the reason they say is because the government has to then present evidence on this point. They don't know. And the question of whether any one individual is an Indian or is not an Indian or is a tribal member or is not a tribal member is often quite complex. I mean, it's not, it's not, people don't have it written on their forehead. Well, I guess the question is, is it an element of the jurisdiction as it is in the Federal Court? And our basic argument is one of, in that sense, it's a statutory construction under the Duro fix. Congress, although they say all Indians, they limited it to a certain set of Indians that have a political affiliation. But I think the, what I. The difficulty, too, is you have to tie it back to the 1153. Yes, Your Honor. So what you really would be doing is saying the Duro fix was just to fill that gap where you had people that were neither here nor there. And that seems clear why Congress jumped in. But here what you're asking us, in effect, is to jump into a tribal prosecution and to dictate the elements of the crime. And that seems to me to be a fairly broad extension of intrusion into the tribal sovereignty. No. Why isn't that the case? I think this is the problem, because in the backdrop is who can shoulder that burden better in this sense? If the defendant in the Indian tribal court has no right to counsel, which they do not, then the tribes are putting the burden on an unrepresented person. And then if they don't know how to go about that and they don't have counsel, then they can send them to jail for a year. And what is the appeal process in this particular tribal system? Well, in Nevada, Your Honor, they have an intertribal court of appeals. And in fact, this did get litigated at that level through the lay attorney that Ms. Donegal had. So in other words, there is a system where you're not left simply with the tribal court. No. You have an appeal right, and you may or may not win by arguing I wasn't an Indian, for example. And so that right's been exhausted, correct? Yes, Your Honor. Okay. And there's no further tribal appeals? That's it. The only thing we have left is the 1303. So now you would like the federal court to come in and say that even despite the tribal appeal, that the tribal court had no jurisdiction in the first place? Yes, Your Honor. And the tribal court, the court of appeal decisions in the record. Right. And basically, they're relying on federal law to decide their cases. And they refer to Bruce, which was basically an 1152 case. And the real difference between Bruce on the 1152 side is that that's based on federal enclave law, number one, which the federal courts have general jurisdiction of. And there's an exception there. But they're relying directly on Bruce to say that jurisdiction for them is an exception, even though they're not a court of jurisdiction, because their jurisdiction is specifically limited to members or at least Indians of political status. And they, I believe, have the burden of proving that. Otherwise, their jurisdiction is void. They don't have the power to send someone to prison, which they did in this case, for a year without an attorney or the right to an attorney. And so they should shoulder that burden and stick within the jurisdiction that Congress says they have. And I don't really care if it's inherent or sovereign. Whether they proved it or not, did they allege it? They didn't allege it. Okay. And that was the other thing. I mean, you have to at least allege in a thing, you would think, that someone's an Indian. They said, well, no, there were some other documents that she was not convicted under that alleged she was an Indian, but those all got dismissed for some other reason. But that's, if you read in their decision, they said, well, that's fine. There's some document around there that alleged she was an Indian, even though she wasn't convicted under that particular one. But, again, I think if we're talking about due process and the right to counsel as part of that, I think that affects how the burdens are allocated in this particular case. And I think when Congress restored their inherent or sovereign jurisdiction or whatever, they limited it specifically, and they used a statute that comes with the whole consolation of interpretations. All you'd have to do is give notice that you're challenging Indian status. Well, Your Honor. There's not much of a burden on the defendant to trigger the government's obligation to prove these things. Well, it did come at the end of the trial case. Well. The late counsel says, look, you haven't shown she's an Indian. You've got to do it earlier. That's not a big burden, either. But they're relying on Federal Rule 12 to say that you have to do that. But that's not what Rule 12 says. You know, that's like going into a State court who says, well, I interpret State court of criminal procedure 11 the same as Federal. And then we say, well, actually, you kind of got it wrong. We don't really view it that way. But the State court is the one that interpreted it. So we could no more go into the State court and tell them they misinterpreted it than we can go into the tribal court. Well, Your Honor, their jurisdiction is legislative and is constrained by their jurisdiction. They're, in this case, they're trying to say we have jurisdiction over everybody, which is not true. Thank you. We'll hear from the government. I'll go from the tribal level. Thank you. If it pleases the Court, Mitch Wright on behalf of the Arrington Paiute Tribe. The Court is hit on the key issues which are at the very foundation of the case. Most appropriately, who should shoulder this burden of proving what I have called in my briefs Indianness? In the real world of a tribal court, they are oftentimes exceptionally small. Their resources are very limited, and their jurisdiction, while described as also limited, extends a great deal farther than what we would typically consider a municipal or a justice court jurisdiction to assume. Now, in the criminal sense, yes, what are called Class A offenses in the Arrington Paiute Tribe means one year, $5,000 maximum penalty. Class B would be nine months, an accompanying reduction in the fees, six months, and three months for a Class C and D offense. So in that sense, it is limited. But I think if we look at some of the cases that have come out of the civil side, such as A1 Contractors v. Strait, you can see there is no limit on the civil side. So what you have before you really is a hybrid. Now, how do we shoulder this burden, as I said, to focus the Court on that? But, you know, it is a little bit different than a lot of other things we see in that the court jurisdiction is limited as to persons. Usually, I mean, we see lots of stuff in the State courts where the jurisdiction of the court is limited as to the kind of case or the amount of controversy or the penalty and so on. Here, status is the key factor. And as the opposing counsel points out, Congress has said the authority of the court only extends to certain individuals. Why isn't that something that has to be alleged and proved in every case, that in fact the court is not acting on people outside of its jurisdiction? Well, I think it should be. I think that we should have to allege that we have jurisdiction. But jurisdiction at any point can be raised as a defense. And in this case, it's a rebuttable presumption. Now, why? And again, this goes back to the burden. I'm sorry. What's a rebuttable presumption? Is this defendant an Indian? Let me use a very real-world example, if I may, Your Honor. Mr. Powell's mother was the last enrolled member of a tribe. He shows nowhere that he has any degree of Indian blood. If Mr. Powell were to come onto one of the reservations that I represent and commit a criminal offense, and I said, Mr. Powell, I have jurisdiction over you because you maintain a monochrome of Indian blood. And he says, no, I don't prove it. I'm literally going to have to go back and do the genealogy for Mr. Powell to find out if he does or not. Now, even with that known fact, how do I go about doing that? That makes a terrible burden on some of these tribes. I just prosecuted at the Pyramid Lake Tribe last week an Indian from South Dakota. I know his dad in South Dakota from Rosebud Sioux and his grandfather as well. Now, in that instance, because I have some knowledge, I can call up Rosebud and say, please send me his enrollment documents. Well, don't you prosecute it the same as any U.S. attorney would prosecute it under Bruce? The Court of Appeals for the Intertribal Court here went back and did all the Bruce factors, like do they participate in these kind of activities, who are their relatives. Where do we get the money for that? If it's a prosecution under 1352, the Federal Government would have that burden, right? They would, but we're not the Federal Government. What I hold before you are his rights. This book. Are his rights dependent on resources? Is that what you're saying? No. His rights are – when we start talking about due process, the essential elements of due process obviously boil down to notice and an opportunity to be heard. Anything beyond that, the question becomes, what processes do? We give every defendant in tribal court the opportunity to come in and say, well, wait a minute, I'm not an Indian. You can't put me in jail. And it's not enough to say, well, this guy looks like an Indian. So what? It's not enough to say this guy goes to powwows. So what? Even if he's using our medical facilities, is that enough? This is a slippery slope. What will the moniker of proof be to say we have jurisdiction? Because they perhaps have gone over to the tribal health clinic and enlisted health services. Well, they say, guess what, I did that fraudulently. So now are we going to prosecute him in the federal court because they fraudulently received services from a tribal clinic? This opens a Pandora's box. It's enough to allege jurisdiction if there is some Indian blood plus some of these other factors. You could then allege jurisdiction. Then doesn't the burden shift? At that point, you've done your burden of going forward in the process of prosecution. That's not Mr. Powell's argument, ma'am. And, no, I would disagree with that wholeheartedly. So let's say that somebody was born in Russia and they had Indian facial features, but nobody in their family had ever been in the United States, ever. Guy shows up, gets arrested on the reservation, and he's prosecuted. And you say, well, he forgot to say he wasn't an Indian. Well, he says, hey, I don't know, I'm Russian. I have no idea the difference between Indian courts and federal courts. Would he not have a habeas claim? He would, and that's how we're here today. So I think the system is protected. Why is he not the same then as Don Eagle? Mr. Don Eagle? I think that that person that you're describing is, and that's how we're here today. But what we're talking about today is who bears the burden at the front end. And to ask all tribal courts to be able to establish, in this case, I would think that it would have to be beyond a reasonable doubt, because that's the criminal standard we're going to be shackled with. How are we going to do that? Maybe you can walk me back through the process a little bit, because I'm having a little trouble visualizing. So there are lots of people on the reservations who are not Indians. They pass through, they live there, and so on. So let's say there's a, I don't know, vehicular manslaughter, or let's say somebody is drunk driving. So he's on the reservation and caught, and he's drunk driving. How do they decide whether this person will be prosecuted in federal court, in state court, or in tribal court? Does the officer look at his face and see whether he has Indian features, or do they say, oh, you know, I've known you, Grandpappy. So, you know, I'm not joking. I'm just wondering how does somebody has to make an initial decision that the case is going to be prosecuted here or there. How does that happen? And then how does somebody say, you know, no, you've got the wrong guy. I'm really, as Judge McKeown says, a Russian with Indian-looking features, but, you know, I'm not an Indian at all. You just described a case. How does a decision get made? Thank you, Judge. We just had a case like that on the Pyramid Lake Tribe a few years back. A tourist from England came and rented a motorhome. He rented it in Reno, literally had not been behind the wheel on this side of the road where we drive here for more than an hour. And one of our own tribal officers at Pyramid Lake was writing a citation. He went too close to him and hit him. So what happens now? Tribal police come out. They examine the driver's license. What does it say on the driver's license? Does it say that he's Native American? Does it say that he is Indian? Or does he still have his British driver's license? Well, obviously it didn't say Native American. So now we call out the BIA and the Washoe County Sheriff's Department to do an investigation. You're going to have to stop right there because I don't know any of this stuff. BIA is Bureau of Indian Affairs. I know that part. It's written on driver's license whether you're an Indian or not. So the state of Nevada, driver's licenses are issued by the state, but not by the tribal authorities, right? Well, there can be either in some cases. Tribal authorities issue driver licenses as well. In some instances, that's true, Your Honor. So let's say the person has a Nevada driver's license. Would it say Indian on that? No. No, it would not. But if they call them in and there's any history at all, they'll be able to run a check on them through NCIC, National Criminal Information Center. And that would have information as to whether they're an Indian? I'm sorry, I didn't understand. And an NCIC check would tell you whether he's an Indian? If he's ever been arrested, yes. Or whether he's been arrested. If he's been arrested, it will tell you what his race is. And I am using that term intentionally. Okay. And based on that, an initial decision is made whether to file it in tribal court, right? Yes, but it will depend. If the Bureau of Indian Affairs investigator does an investigation, we may be running a concurrent prosecution. If I get notice from the U.S. Attorney's Office that they're going to take the case, I'm going to back off because basically we have limited resources. There's no reason for me to prosecute. And we're going to let it go federal. If the U.S. Attorney, which very seldom takes some of the smaller cases, declines prosecution, and I have jurisdiction because this person is an Indian through either tribal membership or possession of a CDIB certified degree of Indian blood card from the BIA, I'm going to go that route. Okay, so now you're in tribal court. How are proceeding commenced in tribal court? Is it information or what is the document? No, it's a criminal complaint. I'm going to receive. And does the complaint contain an allegation of Indian status? They do now. Yes, Your Honor. Everyone, it will say their name. An Indian honor about this day did violate the tribe's law and order code section 5.02. So if it's alleged in the complaint, does it then have to be proved at trial or are you saying? No, it's a rebuttable presumption. I can't do that. I mean, if I had a seminal guy come up from Florida into Yarrington, and we have this quite frequently, we'll either get illegal immigrants coming and living with Indian women on the reservation, and that's a whole other problem, but if we come and they don't marry one of our Indian women, they just live with them? I understand you have problems. I'm not unsympathetic. I would just like to understand the process. Okay. So your position is if it's alleged in the complaint, which I guess in this case it wasn't. Correct. Then that sets up a rebuttable presumption that they're Indian. We don't want to prosecute somebody we don't have jurisdiction over. First of all, very pragmatically, it's a waste of our resources. We don't have a lot of those. I understand. Just sorry. So it sets up a rebuttable presumption. And in your view, what happens next? Let's say the defendant says up front, early on, no, no, no, I'm not, you know, you got the wrong guy. I'm not an Indian at all. What happens next? Does the government, and put the government on notice of this, does the government then have a responsibility to go forward, or does the defendant then have to come up with evidence rebutting the presumption? No, it's very hard to prove a negative. I think that would be unfair to the defendant. I think now the rebuttable presumption now kicks it back into the tribe's court. Okay. Now we're going to have to say, A, is this case worth pursuing? I mean, is it something serious enough? This person's been here 10 years. They're married to a tribal member. They're going to remain on the reservation. What have they done? And if we say, yes, we're going to pursue this, then we look to the factors. Do you have any rules that say this? I mean, are there any internal tribal court rules that tell you how this works? No. As I started to tell you, this is the entire codification of the laws of the Arrington Paiute tribe, everything in this one binder. Now, it does describe jurisdiction, and I've submitted that in my brief, and I believe Mr. Powell has as well. It gives the outline of what our criminal jurisdiction is quite concisely in a very short paragraph. But when somebody says I'm not an Indian, which I very seldom have had. How does Dawn Eagle know, or how did she know in this case, that she was supposed to raise this objection earlier rather than later, that she should have raised it at the beginning of trial? I mean, she knows now, but how does she know? Great question. I'm sorry? I said it was a great question. Thank you. Her advocate. I'll also give it. Her advocate, Mr. Richard McCauley, brought this case once before himself to the Intertribal Court of Appeals on behalf of himself. He told her in his strategy that he was going to do this. So she knew from the get-go in this instance. Now, generally speaking, how does she know? I don't know that. She never, I think most people wouldn't think of themselves as not being Hungarian or not being Paiute or not being Cherokee. I'm not talking about substance right now. I'm just saying as a matter of notice to the defendant, how does this defendant know that she's supposed to raise it before trial rather than raising it when she did? That's a due process question. That's a question of notice. She raised it during the proceedings, for sure, right? No, she raised it after the close of evidence and everything else. She didn't raise it during the proceedings. In the argument, though, she said. Closing argument? Before the verdict. She did it in closing argument, yes, Your Honor. So before the judgment was entered, sometimes during the proceedings, she raises it. And the position you're taking, the position that the Intertribal Appeals Court took, if I understand it correctly, is, yes, that's a good kind of objection, but raised too late. We think she needed to raise it earlier, before the evidence. Well, the objection wasn't. And here's the funny part. She didn't say I'm not an Indian. She is an Indian. She admits she's an Indian. What she said is, you haven't proven I'm an Indian. But by virtue of exercising jurisdiction, we have proven our burden that she indeed was subject to the jurisdiction of the court. Let's put this case aside. And let's bring the next case on. Okay. How do they know when they're supposed to raise an objection and how the objection needs to be phrased? How do they do it? Let's say there's a defendant presented by Mr. Powell. He wins or loses in this case, whatever happens in this case. She says, okay, now I'm smarter. I know what I'm supposed to do. And in the next case, I will do what? Well, I think that question was for me. In this case, I didn't have in this particular complaint that Leslie Dawn Eagle, an Indian, did on this day. I just had Leslie Dawn Eagle did on this day do this bad stuff to these little kids. What about the probable cause statements? Were they said that she was an Indian in this case? No. The probable cause statement is basically an echo of the criminal complaint. Okay. Well, the reason I'm asking that is because the tribal appellate court seemed to think that there was an allegation of being an Indian. In the citation. In the citation. Yes. It was attached to the complaint. Correct. That's true. She got the citation and was given that when she got her booking papers after she came out, when she was coming out of jail with the court date. That's when she got that. And that was alleged that she was an Indian in one of those citations. I believe so. In the citation alleging the criminal child abuse. What happens on habeas when the tribal appellate court then says, okay, well, even if it was alleged in the attachment to the complaint, but even if it wasn't proven, the evidence, all the evidence in the record is that she is an Indian. And then they walk through, you know, the descendancy plus the tribal health services. So they did address it as a substantive matter. Where does that leave us? What do we do with that determination by the court of appeals? I think they said there's evidence on the record that they are, in fact, Indians. And then there's discussion. Do we give that some deference? I would think minimally as to deference. Where I think that's very enlightening for you is where they had to go to get that information. If a tribal prosecutor is told you have to prove that this person is an Indian, not a tribal member, but just an Indian, are they going to have to walk across to the tribal health clinic? Are they going to, if they call the BIA? You know, I know it's tough, and I know you want to talk about how difficult it is. Well, Reno-Sparks Indian Colony won't give it, Judge. They just won't give it to us. You're not answering my question, which is, this is what the record says. I'm telling you what the court of appeals said, and they got it from your criminal transcript record. They did. And I think they didn't have to fly to Washington, D.C., and plow through the BIA. No, recognizing that that question is something of a softball. Yes, I think that we can give it great deference. I thought you just told me where I wasn't supposed to. No, I said that I think what you need to look at behind that is what individual prosecutors would have to go through. No, I mean, this case isn't about individual prosecutors. This is about Ms. Don Eagle and how whether there needed to be proof and whether there was proof. We're not deciding for all time, you know, what individual prosecutors need to do. This is an individual case. In this case, I think that's a different question. And, yes, I think you should give great deference to what the intertribal court of appeals found in that instance. And what do we give deference to? I mean, they can't just make it up, right? Correct. As I sit here listening to you, you said, look, proving it is hard and, therefore, what you need is you allege it. The prosecutor alleges it, and that sets up a rebuttable presumption, and that's good enough. And I'm sort of coming along and saying, okay, well, maybe that's okay. But then you tell me I forgot to allege it in this case. So you don't even have a rebuttable presumption here because you didn't say Don Eagle, comma, India, comma. You said Don Eagle. You got me there. So where is the ‑‑ so you lose this case, right? No, no, I don't like that. Well, you don't like it, but pretty much that's what you've argued. You said you have a rebuttable presumption because you allege it, but I forgot to allege it, and, therefore, I lose it, it seems to me, is the next thing you need to say, which is okay. I think Mr. Powell will shake your hand because he's an honorable man. It might be better from that standpoint in one way, but, no, I disagree. I'm just following your argument. Okay. Let me say this. There were other allegations in that complaint. Okay? It wasn't ‑‑ we just didn't forget to put in there that she was an Indian. When a defendant got the complaint ‑‑ Let me refine my question just a tiny bit because I ‑‑ All right. We're talking due process, and what I hear you saying to me is, look, proving it up is very hard, and what we need to do is we've got this allegation, that sets up a rebuttable presumption. Right. And if they don't do anything, then, you know, you can rely on the rebuttable presumption. I hear you don't have this allegation. You've got other stuff which you're now going to cite to me, and I keep thinking due process. How do they know that they're supposed to tell you, prove it up, because, you know, you didn't set up the allegation that sets up the rebuttable presumption. How do they know they're supposed to pick through their complaint? And we're talking in the general case now. We're talking in the general case, not Don Eagle. I'm talking about Don Eagle. Don Eagle's Richard McCauley was the gentleman that I told you took this to the Intertribal Court of Appeals for his own earlier and was rejected by the Intertribal Court of Appeals on his own behalf a couple years earlier that a failure to prove Indian heritage warrants being kicked out. So this was Richard's strategy from the get‑go, is that he would wait until the end and then allege it. That's how she knew. I don't think your understanding will answer my question. My question is, as a matter of due process, how does Don Eagle know, given that you didn't make the allegation in the complaint, how does she know that these other things in the complaint are enough to trigger the rebuttable presumption, which she is then supposed to give notice that she is rebutting? Just as she tries to disprove all of the elements listed in the complaint that, no, this didn't happen, I didn't do this, I didn't do this. I thought criminal defendants don't have to say anything. They don't. But you're asking ‑‑ They don't have a burden to disprove anything. They don't. They can sit mute and say nothing. They can. All the time defendants wait in the weeds, for example, in Federal Bank robbery cases, because sometimes the government forgets to prove that it's a Federal Bank. I've seen it. They just sit there and they wait, praying, and then they get to the end and they say, whoa, amazingly, Eureka, the government forgot to prove it was a Federal Bank. Forgot the certificate. There was no certificate. Or they forgot to say in some other criminal charge it was an interstate commerce, and they just sit there, like you're saying this guy did, you know, and the counsel, and then, well, game over. Well, counsel defended quite rigorously at trial. I mean, he did. Well, I understand, but he was, as you said, waiting in the weeds on the Indian status. So he's not any different than bank robbery defense counsel who's hoping that maybe the government will forget to put in the part about the Federal Bank. And then we say, well, that was so the real question, you're really back to the other question is, is the element of Indianness part of the elements of the crime? Isn't that the real question we have to decide? And, yes, and I think that's where it gets real hairy, because now is this a racial classification or is it a political status? And for most people, I would imagine this panel included, you don't sit there and think, I am this nationality. And I know criminal defendants, when they're brought to court, I've never seen that, unless they're going, wait a minute, I'm not an Indian. Do I have to go to jail for this? And the credibility of most prosecutors, I think, if a guy walks in and he's being charged criminally, certainly I'm going to ask. Judge Kaczynski, if you walked into one of my criminal courts, say, at Pyramid Lake on a hunting and fishing citation, and you've been charged under the criminal side instead of the civil side, there are certain indices that cannot be ignored. And there's a lot of hubbub about this. But I think that in the interest of substantial justice and fair play, I'm going to say, sir, where are you from? And are you affiliated with any Native American tribe? And then I'm going to say, your Honor, I have to amend this complaint from a criminal complaint to a civil complaint. It does not appear that there's a jurisdictional nexus that is effective in this case for a criminal charge to vest. So in looking at the system, that is why we ended up with the Duro fix. I was talking with Judge Kennedy when he heard Oliphant, who went and threw his fishing lure into the water just to test the proposition. Yeah, well, and that's why we ended up with the Duro fix. And I think there's been a lot of dodging around, are Indians a political classification or is it a race? And it's a tough question. It is a tough question. Well, the Supreme Court actually addressed it, that it wasn't race-based, it was politically based. Are we referring to Hicks? No, there's actually cases way before Hicks. Well, we can go back to Johnson v. McIntosh. But Hicks was my case. I argued Nevada v. Hicks before this very court. And I was telling Mr. Powell just before we started today, we were really excited when we left because we knew we'd done well. But the day that we got notice that it had been accepted for cert, I got physically ill. I knew I'd lost. That court doesn't take cases to sustain the result. So my fear with this one is if we don't limit it to the facts of this case, your instincts on what is every prosecutor's burden I think is a good instinct. But, you know, I still have difficulty how we sustain this conviction here if you didn't allege. You didn't even allege. You didn't even set up the presumption. Tell me one more time. How do we sustain the conviction here? Well, here's some of the things that the Intertribal Court of Appeals found. These little girls, getting into the facts of the case to support the answer to the question, not for any other reason. These little girls were staying with their aunties. These little girls are clearly enrolled members of the tribe. So is it fair to assume that they're aunties who are going to the health clinic and who are participating in tribal celebrations and who have come to court before? This wasn't their first appearance there. Are indeed of Native American descent. And so that's how I think we got there. And their sisters, I happened to prosecute their sisters in Walker River, and I had alleged in the Walker River complaints that they were Indians. But this is not a substantial evidence question. This is a question of notice. If you don't allege it, the whole case, the criminal case, starts, begins, and ends with the prosecutor's allegation against the defendant. If they leave out, to Judge McKeown's example, the allegation that this was a federal bank, it's just not in the indictment. You can't get a conviction. Even if you come in and you show, or there's evidence in the record from which a jury might draw the inference or something, or you have a witness say it or something, if it's not in the opening document, the defendant doesn't have the proper notice on which to defend. Now you say, well in this case it doesn't matter because she clearly is, we all know she is. But nevertheless, it's something that the prosecutor has to prove, and therefore it's something that the defendant has to have notice to dispute if he chooses to dispute. Now, how do you get past that? In the criminal code, there is notice provided to the defendant. The tribal court shall have criminal jurisdiction over all offenses enumerated in this law record, and any subsequent ordinance adopted by the tribe when committed within the jurisdiction of the court by any Indian, any other person to be the fullest extent allowed by the status of any warrant or future federal or state law. I understand. It's notice to any Indian. But you then have to somehow establish that this is an Indian, that this is something. And if you don't give notice that this is something that the government needs to establish, how does she know when the time has come for her to say, I dispute this? I don't know that we need to establish that. I'm not sure that there is a directive. And this is where Mr. Powell and I, I think, really have some strong disagreement. This is the superimposing of a Federal structure on a tribal system. When we started getting into 1152 v. 1153, and yes, I did address some of those arguments in my brief to you, but I don't see anywhere where I am required to do that under the tribal law and order code. There's nothing that says I have to do that. But under your tribal code, there is a part that says being non-Indian is an affirmative defense. Is there a section that says that, where you define non-Indian status? I think being non-Indian, there is a presumption going in that we are exercising jurisdiction properly by bringing a criminal complaint. That is a rebuttable presumption by a showing on the part of the defendant that they are a non-Indian and therefore not subject to the criminal jurisdiction of the court. When you say showing, you mean a notice or you mean actual evidence? No, all they have to do is stand up and say, I'm not an Indian. Well, then the ball comes back to my court, and I've got to say, yes, you are. Let me show you. Now we take a time-out, and I have to go back and find where that goes. I'm concerned, too, about what would the case be all across the 570-some tribes now. I think we've already taken more time than by far. Yeah, we're 21 minutes over. I think so. Thank you. I think you're out of time, but we have a couple of minutes. To answer the question, what it says, the tribal code, and it's at EOR 46, Judge McKeon. It's 121030? Right. Okay. And what it says is that, okay, whenever status is non-Indian is not immediately clear, and apparently, I guess, if you don't look Indian or you do look Indian, this is my problem with this, that, okay, somebody is making this decision, whether you look Indian or you don't look Indian, and then, but what it says is, the burden of raising the issue of non-jurisdiction shall be on the person claiming it, okay? If they admit that they must plead that you're an Indian, you raise the issue by pleading not guilty, just like you do on any other criminal case. Well, I don't read it that way. I guess the way I read this was notice to say that they proceed as if there's jurisdiction, and then if you want to say you're not an Indian, that burden falls to the defendant. But all you have to do is say, I'm not an Indian, and then it goes back to the prosecutor. But then the question is, can you do that in your closing statement as opposed to before the trial? It doesn't say when you have to do it. And again, it's a notice problem. But I mean, okay, if you say, if they plead that you're an Indian, you say, I'm not guilty of being an Indian or doing the rest of this stuff, then is that not raising the issue? No. That one I would have a little trouble with. But I mean, I think she raised the issue, or her lay advocate raised the issue, but the question is timing, and then the court says procedurally it's too late. And so then the question becomes, are jurisdiction over that kind of procedure? And I don't know the answer to it. But I hear what you're saying. You think it's sort of a front end. They're saying it's the back end. Well, they're admitting that they should have pleaded to give sufficient notice under due process. And now, I mean, and I think that's part of our thing. Okay, now we're there in terms of is that part of the pleading and the notice. And then again, well, so then now we're at who has the burden of proof. And the wrong thing says they always have the burden of proof. That's what that little provision says. Once you raise it, they have the burden of proof. It says at the end, and this is from their brief at page 12. But it's hard for them to meet the burden of proof if the proofs are closed. Well. So the clear implication of this is that this has to be raised at a time at which they can meet the burden. If you raise it after the proofs are closed, it's, you know, I don't know. Well, I guess like anyplace else, since we don't have juries, this case wasn't a jury, that they can ask to reopen the thing if that's their problem. But, I mean, it's not like they can't. But what's interesting to me is the way they framed the language, is that the person claiming the exemption from jurisdiction, they're not exempt from jurisdiction. They don't have any jurisdiction over these people. That's my problem here. And it isn't a racial issue. I mean, it can't be. Okay, I am, in fact, ethnically Indian to some extent. So what? But I'm not politically affiliated with anybody. I'm not an enrollment. Well, but you don't have to be an enrolled member to be subject to urgent jurisdiction. Well, that's questionable. Because that issue has not been decided, and I really don't want to go all that far because Well, it has been decided in the Ninth Circuit, it says so. Well, Antelope says that we don't know if enrollment's quite enough. They left that question at least if that level is open. Because they said that, well, I mean, that's obviously the easiest way to prove that you're number one, a certain quantum, and number two, that you're politically affiliated, because you've taken the time. You meet that blood quantum thing, usually it's a quarter. And you have taken the opportunity to go in and enroll and submit yourself to the political system. And so that's where we're at. I mean, but I'm trying to figure out how much we need to really decide in this case. To what extent does your argument hinge on the fact that they did not allege this in the Indian status, in the, what is it, complaint information? Complaint, yes, sir. Complaint. Because, of course, that would only go to your client. I'm not sure whether we need to speak to what happens when they properly allege it, or when they do allege it in the complaint. In this case, they didn't allege it. They did not. To what extent does your argument hinge on that? That's sort of a factual proof of that in that sense, Your Honor. And I understand what you're saying. The Court's asking is can we limit it to this case. But the problem we have is that even though now the Urington Paiute tribe has decided to allege this, this is not true in the other 23 or 24 tribal courts down there. In fact, they take the, the intertribal court takes the exact opposite position. They don't have to allege it anywhere. And they're the highest tribal court in the State that has jurisdiction over the 25 or so tribal courts that we have there. So, I mean, we have to get at least to say to them, to tell them that, no, you can't decide it that way. They have to allege it. And it's not saying, you know, that's the problem that different tribal codes have different requirements. It's kind of a mess. There's 27 different ones there. But the intertribal court says, no, it's, it never has to be alleged. We don't care. And, I mean, that's, that's my concern is because this isn't the only tribal court in existence there. If this had been alleged in the complaint, would you be here? Based on the evidence in this record? Yes. I mean, because my point, again, is, is that if you'll, if you'll read the intertribal courts, sort of, they're looking at it as actually a sufficiency of the evidence argument in, in this sense. And they're saying, they're spending more time talking about whether or not the victims are Indians, which they never proved. And this is interesting to me. If those girls, the victims in this case, were enrolled members of the Arrington Paiute tribe, it seems like to me that would have been real easy to walk across the streets and here's their tribal rumor. That wasn't even presented. But now what they say is, well, because these girls went and got Indian services, and these girls did this, or these girls did that, and these, the defendants in this case, are their aunties, that that means they're Indian. Well, I have aunties that are Indian, and I have aunties that aren't, because I'm mixed. And so that proves squat. We won't point to that. Thank you, counsel. But, no, I mean, really, this, the idea that they have to plead it and prove it is very necessary to the, to the development of due process in the tribal courts. Counsel have managed to do what they're supposed to do, which is to make the case harder after oral arguments. I walked in thinking this was an easy case, but I no longer do. Thank you for doing your job and messing, messing it up for us. No, no, no. I actually do mean it here. Very well done, gentlemen. Thank you. The case just arguably stands submitted, and somehow we'll figure it out.
judges: Kozinski, Thompson, McKeown